[Cite as *State v. Carson*, 2026-Ohio-2709.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

STATE OF OHIO,                :      CASE NO. 25CA23

     Plaintiff-Appellee,       :

     v.                       :      DECISION AND JUDGMENT ENTRY

MICHAEL L. CARSON,        :

     Defendant-Appellant.     :

_____
APPEARANCES:
Angela Miller, Jupiter, Florida, for appellant[1].

Anneka P. Collins, Highland County Prosecuting Attorney, and
Adam J. King, Assistant Prosecuting Attorney, Hillsboro, Ohio,
for appellee.

_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:7-9-26
ABELE, J.

{¶1} This is an appeal from a Highland County Common Pleas Court judgment of conviction and sentence. Michael Carson, defendant below and appellant herein, raises three assignments of error for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "THERE WAS INSUFFICIENT EVIDENCE PRODUCED AT TRIAL TO SUPPORT A FINDING OF GUILT ON AGGRAVATED POSSESSION OF METHAMPHETAMINE IN VIOLATION OF APPELLANT CARSON'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AS WELL AS ARTICLE I, § § 5, 9, AND 16 OF THE OHIO CONSTITUTION."

_____
[1] Different counsel represented appellant during the trial court proceedings.

SECOND ASSIGNMENT OF ERROR:

"THE JURY LOST ITS WAY BY FINDING APPELLANT
CARSON GUILTY AGAINST THE MANIFEST WEIGHT OF
THE EVIDENCE."

THIRD ASSIGNMENT OF ERROR:

"THE REPRESENTATION PROVIDED TO CARSON FELL
BELOW THE PREVAILING NORMS FOR COUNSEL AND
AFFECTED THE OUTCOME OF HIS TRIAL IN
VIOLATION OF THE FIFTH, SIXTH, AND
FOURTEENTH AMENDMENT TO THE UNITED STATES
CONSTITUTION, ARTICLE I, §§ 2, 10, AND 16 OF
THE OHIO CONSTITUTION."

{¶2} In July 2025, a Highland County Grand Jury returned an indictment that charged appellant with (1) one count of burglary in violation of R.C. 2911.12(A)(2), a second-degree felony, (2) one count of theft in violation of R.C. 2913.02(A)(1), a first-degree misdemeanor, and (3) one count of aggravated possession of methamphetamine in violation of R.C. 2925.11, a second-degree felony.  Appellant entered not guilty pleas.

{¶3} On September 10, 2025, appellant filed a motion in limine to prevent appellee from presenting evidence or testimony related to a purported video from Fenner Ridge Apartments. After a hearing, the trial court granted the motion in limine. On September 15, 2025, the court granted appellee's motion to dismiss counts one and two of the indictment based on the decision of the court regarding the investigating officer's

failure to collect video evidence in the matter.  The court denied counsel's September 16, 2025 motion to withdraw as counsel, stating that appellant "fired her. . . stated that he no longer wishes to have your undersigned represent him and attempted to leave the attorney/client interview room. . . refused to converse . . . and stated that she no longer represents him."

{¶4}  At appellant's September 22, 2025 jury trial, Highland County Sheriff's Captain Chris Bowen testified that he assisted in the execution of a search warrant at an apartment leased to Elizabeth Kibler.  Bowen explained that when officers arrived, they found appellant asleep in the bedroom.  Bowen assisted with the search of the bedroom, took photographs, and collected evidence.  Bowen testified that he had been told that items on the bed "had come from gray shorts that were on the floor beside the bed on the left side of the bed."  Bowen searched the shorts and found a camouflaged container and a grenade-like container.  Bowen also found "a black pouch that contained a plastic vial of powder that was also laying (sic.) on the bed with the items that came from the shorts."  The grenade, camouflaged vial, and black pouch all contained methamphetamine.  Bowen also collected a gray duffel bag on the floor beside the bed that contained drug paraphernalia, digital scales, and "some mail" addressed to appellant.

{¶5} Highland County Sheriff's Lt. Vincent Antinore also assisted with the execution of the search warrant. Antinore testified that when officers arrived, appellant was in bed asleep in his underwear. When appellant asked if he could put on shorts, Antinore instructed another officer to empty the shorts' pockets and then allow appellant to put on the shorts. The officer emptied appellant's pockets onto the bed and onto the floor near the bed.

{¶6} Lt. Antinore testified that next to the bed he found a pack of cigarettes with a clear plastic bag of methamphetamine and a wallet that belonged to Kibler. He also found a box of tissues on the nightstand that contained a blue container of methamphetamine hidden inside, approximately four feet from appellant's position. Antinore explained that the apartment property manager was on scene that day and stated that appellant was not listed on the lease, but Antinore found men's clothing in a closet. Antinore admitted on cross-examination that when law enforcement first arrived at the apartment, they did not possess a search warrant; consequently, they removed the occupants and waited for the warrant.

{¶7} Ohio Bureau of Criminal Investigation Forensic Chemist Stanton Wheasler testified regarding State's Exhibit 1, a lab report. Wheasler explained that the combined weight of the methamphetamine was more than 15 but less than 150 grams,

which is more than 5 times the bulk amount.  Specifically,

Wheasler detailed the findings in Exhibit 1:

> 1. Faux grenade metal container with a plastic bag with crystalline solid substance and loose crystalline solid substance – 2.60 g +/- 0.05 g – found to contain Methamphetamine.  Method(s) of testing used: chemical testing and GC-MS.
>
> 2. Zipper pouch containing a plastic bag with silicone earbud covers and a knotted plastic bag with crystalline solid substance – tested the crystalline solid substance – 1.14 g +/- 0.05 g- found to contain Methamphetamine. Method(s) of testing used: chemical testing and GC-MS.
>
> 3.  Metal vial with crystalline residue – trace amount – found to contain Methamphetamine.  Method(s) of testing used: chemical testing and GC-MS.
>
> 4.  Plastic bag with crystalline solid substance – 2.48 g +/- 0.05 g – found to contain Methamphetamine. Method(s) of testing used: chemical testing and GC-MS.
>
> 5.  Plastic bag with crystalline solid substance – 1.71 g +/- 0.05 g – found to contain Methamphetamine. Method(s) of testing used: chemical testing and GC-MS.
>
> 6.   Three (3) plastic bags with crystalline solid substance – 14.09 g +/- 0.05 g – found to contain Methamphetamine.  Method(s) of testing used: chemical testing and GC-MS.

{¶8}  At the close of appellee's case, the trial court

overruled appellant's Crim.R. 29 motion for judgment of

acquittal.

{¶9}  After hearing the evidence, the jury found appellant

guilty of third-degree felony aggravated trafficking in drugs.

{¶10} Subsequently, the trial court proceeded to sentencing.

Appellee noted that it possessed camera footage from appellant's

cell phone of "some pretty violent videos of this defendant, for lack of a better way to phrase it, just beating the crap out of her [Elizabeth Kibler] right in the living room."  Appellee sought the maximum sentence based on appellant's prior criminal history, including trafficking in methamphetamine and "his priors in Florida."  Appellee further noted that, despite the trial court's admonition that appellant not have contact with Kibler, jail calls indicated that "every single day he called the phone number of the person where she was staying, and while [Kibler] didn't get on the phone with him directly it was constantly, well, tell her this, well tell her that, well, what is she going to testify about, what is she going to say about me, this that and the other."  Appellee concluded, "he just has no respect for the authority of the Court."

{¶11} Defense counsel, on the other hand, argued that appellant had been on community control from a case earlier in the year and had been "doing well" at the STAR program.  Thus, appellant asked for community control and completion of the STAR program.

{¶12} The trial court noted appellant's threats against his co-defendant, "which appears to have worked because she didn't testify against you."  The court referenced appellant's previous Florida convictions and observed that the scales indicated trafficking.  The court sentenced appellant to (1) serve a 3-

year, 36-month maximum prison sentence, (2) serve up to a 2-year post-release control term, and (3) pay costs.  This appeal followed.

I.

{¶13} In his first assignment of error, appellant asserts that his convictions should be reversed because insufficient evidence supports a finding of guilt beyond a reasonable doubt. In his second assignment of error, appellant contends that his convictions are against the manifest weight of the evidence.  As a threshold matter, because appellant challenges both the sufficiency and the manifest weight of the evidence, we initially address both standards of review.

{¶14} A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), syllabus; *State v. Blevins*, 2019-Ohio-2744, ¶ 18 (4th Dist.).  When reviewing the sufficiency of the evidence, an appellate court's inquiry focuses primarily on the adequacy of the evidence; that is, whether the evidence, if believed, could reasonably support a finding of guilt beyond a reasonable doubt.  *Id.* at syllabus. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact

could have found all the essential elements of the offense beyond a reasonable doubt. *E.g., Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

{¶15} Furthermore, under the sufficiency of the evidence standard, a reviewing court does not assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring). Therefore, when reviewing a sufficiency of the evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. *See, e.g., State v. Hill*, 75 Ohio St.3d 195, 205 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477 (1993). A reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

{¶16} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins*, 78 Ohio St.3d at 387. "The question to be answered when a manifest weight issue is raised is whether 'there is substantial evidence upon which a jury could reasonably conclude that all the elements

have been proved beyond a reasonable doubt.' " *State v. Leonard*, 2004-Ohio-6235, ¶ 81, quoting *State v. Getsy*, 84 Ohio St.3d 180, 193–194 (1998), citing *State v. Eley*, 56 Ohio St.2d 169 (1978), syllabus.  A court that considers a manifest weight challenge must " 'review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses.' " *State v. Beasley*, 2018-Ohio-493, ¶ 208, quoting *State v. McKelton*, 2016-Ohio-5735, ¶ 328.  However, the reviewing court must bear in mind that credibility generally is an issue for the trier of fact to resolve.  *State v. Issa*, 93 Ohio St.3d 49, 67 (2001); *State v. Murphy*, 2008-Ohio-1744, ¶ 31 (4th Dist.).  " 'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.' " *Barberton v. Jenney*, 2010-Ohio-2420, ¶ 20, quoting *State v. Konya*, 2006-Ohio-6312, ¶ 6 (2d Dist.), quoting *State v. Lawson*, 1997 WL 476684 (2d Dist. Aug. 22, 1997).

{¶17} Thus, an appellate court will generally defer to the trier of fact on issues of evidence weight and credibility, as long as a rational basis exists in the record for the fact-finder's determination.  *State v. Picklesimer*, 2012-Ohio-1282, ¶ 24 (4th Dist.); *accord State v. Howard*, 2007-Ohio-6331, ¶ 6 (4th

Dist.) ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight."). Accordingly, if the prosecution presented substantial, credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. *Accord Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting *Thompkins*, 78 Ohio St.3d at 387, quoting Black's Law Dictionary 1594 (6th Ed.1990) (a judgment is not against the manifest weight of the evidence when " ' "the greater amount of credible evidence" ' " supports it).

{¶18} Consequently, when an appellate court reviews a manifest weight of the evidence claim, the court may reverse a judgment of conviction only if it appears that the fact-finder, when it resolved the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983); *accord McKelton* at ¶ 328. Finally, a reviewing court should find a conviction against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d

at 175; *accord State v. Clinton*, 2017-Ohio-9423, ¶ 166; *State v.*

*Lindsey*, 87 Ohio St.3d 479, 483 (2000); *State v. Hodges*, 2025-

Ohio-2050, ¶ 29-30 (4th Dist.).

{¶19} R.C. 2925.11(A) sets forth the essential elements of

the offense of possession of drugs.  The statute provides: "No

person shall knowingly obtain, possess, or use a controlled

substance or a controlled substance analog."  R.C. 2901.22(B)

defines when a person acts knowingly:

> A person acts knowingly, regardless of purpose, when the
> person is aware that the person's conduct will probably
> cause a certain result or will probably be of a certain
> nature. A person has knowledge of circumstances when a
> person is aware that such circumstances probably exist.
> When knowledge of the existence of a particular fact is
> an element of an offense, such knowledge is established
> if a person subjectively believes that there is a high
> probability of its existence and fails to make inquiry
> or acts with a conscious purpose to avoid learning the
> fact.

{¶20} Whether a defendant knowingly possessed a controlled

substance "is to be determined from all the attendant facts and

circumstances available."  *State v. Teamer*, 82 Ohio St.3d 490,

492 (1998); *accord State v. Corson*, 2015-Ohio-5332, ¶ 13 (4th

Dist.).  To establish knowing possession of a controlled

substance under R.C. 2925.11(A), the state is not required to

prove that "a defendant knew the specific characteristics of the

item possessed that made it" a controlled substance.  *State v.*

*Jordan*, 89 Ohio St.3d 488, 494 (2000); *accord State v. Williams*, 2005-Ohio-1597, ¶ 34 (2d Dist.).

{¶21} "Possession of drugs can be either actual or constructive." *State v. Bustamante*, 2013-Ohio-4975, ¶ 25 (3d Dist.), citing *State v. Cooper*, 2007-Ohio-4937, ¶ 25 (3d Dist.), citing *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976).  " 'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.' "  *State v. Kingsland*, 2008-Ohio-4148, ¶ 13 (4th Dist.), quoting *State v. Fry*, 2004-Ohio-5747, ¶ 39 (4th Dist.). "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, (1982), syllabus; *State v. Brown*, 2009-Ohio-5390, ¶ 19 (4th Dist.).  For constructive possession to exist, the state must show that the defendant was conscious of the object's presence.  *Hankerson*, 70 Ohio St.2d at 91; *Kingsland* at ¶ 13; *accord State v. Huckleberry*, 2008-Ohio-1007, ¶ 34 (4th Dist.); *State v. Harrington*, 2006-Ohio-4388, ¶ 15 (4th Dist.); *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988) ("Ohio law is clear that a suspect can be in 'constructive possession' of ... property without having actual physical possession of the property if it is located within

premises under the suspect's control and he was conscious of its presence.").

{¶22} Both dominion and control, and whether a person was conscious of the object's presence, may be established through circumstantial evidence alone. *E.g., Brown* at ¶ 19; see, e.g., *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus ("[c]ircumstantial evidence and direct evidence inherently possess the same probative value"); *State v. Davis*, 2018-Ohio-4268, ¶ 50 (3d Dist.)(prosecution may establish constructive possession by circumstantial evidence alone.). "Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved ...' " *State v. Nicely*, 39 Ohio St.3d 147, 150 (1988), quoting Black's Law Dictionary 221 (5th Ed.1979).

{¶23} Furthermore, to establish constructive possession, the State need not show that the defendant had "[e]xclusive control" over the contraband. *State v. Tyler*, 2013-Ohio-5242, ¶ 24 (8th Dist.), citing *State v. Howard*, 2005-Ohio-4007, ¶ 15 (8th Dist.), citing *In re Farr*, 1993 WL 464632, *6 (10th Dist. Nov. 9, 1993) (nothing in R.C. 2925.11 or 2925.01 states that illegal drugs must be in sole or exclusive possession of accused at time of offense).  Instead, " '[a]ll that is required for

constructive possession is some measure of dominion or control over the drugs in question, beyond mere access to them.' " *Howard* at ¶ 15, quoting *Farr* at *6.  Thus, simply because others may have access to the contraband, in addition to the defendant, does not mean that the defendant "could not exercise dominion or control over the drugs."  *Tyler* at ¶ 24; *accord State v. Walker*, 2016-Ohio-3185, ¶ 75 (10th Dist.) because multiple persons may have joint constructive possession of an object.  *State v. Philpott*, 2020-Ohio-5267, ¶ 67 (8th Dist.); *Wolery*, 46 Ohio St.2d at 332, 329 ("[p]ossession * * * may be individual or joint" and "control or dominion may be achieved through the instrumentality of another"); *State v. Russell*, 2022-Ohio-1746, ¶ 43 (4th Dist.).  Although a defendant's mere proximity is in itself insufficient to establish constructive possession, proximity to the object may constitute some evidence of constructive possession.  *Fry* at ¶ 40.  Therefore, "presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession."  *Kingsland*, 2008-Ohio-4148, at ¶ 13.

**{¶24}** In the case sub judice, appellant contends that appellee failed to prove that appellant constructively possessed the methamphetamine found in Kibler's apartment.  Appellant argues that the only evidence appellee presented is appellant's

presence in Kibler's apartment where officers found multiple containers of methamphetamine and drug paraphernalia.  Appellant emphasizes that Kibler is the sole lessee of the apartment, appellant is not a resident, and officers found no drugs on appellant.  Appellant further notes that appellee acknowledged that it was difficult to prove whether the methamphetamine belonged to Kibler or to appellant, but argued that both defendants "could have" possessed the drugs since they were both present in the apartment.

{¶25} In the case at bar, appellant maintains that *Kingsland* and *State v. Smith,* 2005-Ohio-3233 (3d Dist.) compel reversal. In *Kingsland, supra,* this Court considered whether the State presented sufficient evidence for the jury to determine whether Kingsland knowingly exercised dominion and control over the chemicals found in a pickup truck.  We noted that the officer's testimony and the exhibits admitted at trial made clear that Kingsland could be a passenger in the truck and be unaware of the bottles, jars, and chemicals to manufacture methamphetamine in the back of the truck.  We observed that the State presented no evidence to show that Kingsland had any specialized knowledge regarding methamphetamine production, or that he should have recognized these objects as components in the production of methamphetamine.  Further, the State produced no evidence as to when Kingsland entered the truck or how long he had been a

passenger.  Thus, we concluded that the evidence adduced at that trial only provided mere proximity to the illegal chemicals. *Id.* at ¶ 16.

{¶26} We believe, however, that *Kingsland* is distinguishable from the instant case.  Although appellant contends that appellee adduced no evidence to prove constructive possession, we point out that evidence adduced at trial showed, inter alia, that (1) officer found appellant asleep in the bedroom with drugs and drug paraphernalia, (2) appellant "was in bed in his underwear," and officers found appellant's shorts "directly next to the bed, at the bed side in front of the night stand," (3) before allowing appellant to put on the shorts, another officer "emptied the shorts for all its contents," "onto the bed and the floor next to the bed," (4) officers also found multiple bags and containers that contained methamphetamine in that bedroom, including a grenade-shaped container, a camouflaged vial, and a black pouch, (5) officers found an assignment notice with appellant's name on the bedroom night stand, (6) officers found a gray duffel bag on the floor next to the bed that contained drug paraphernalia, digital scales, and mail addressed to appellant, (7) officers found men's clothing in the apartment's closet, and (8) according to Lt. Antinore on cross-examination, the apartment property manager stated that "they were having

problems with the tenant because it was leased to Elizabeth Kibler, however, she had Michael Carson living with her."

{¶27} In *Smith, supra,* 2005-Ohio-3233, the State only adduced evidence to show that the defendant was present in a small, one-room apartment where cocaine was located.  The Third District emphasized that no drugs were found on his person, and the State conceded that it was impossible to prove who provided the cocaine.  The court found the evidence presented that established Smith's presence at the scene insufficient to prove that he exercised control over the cocaine.  *Id.* at ¶ 7. However, we find *Smith* distinguishable on the facts of the present case.  In the case at bar, although officers did not find drugs on appellant's person, they did find methamphetamine in at least three containers that, moments before, had been in the appellant's shorts beside the bed that appellant donned after officers found him asleep in bed clad only in his underwear.  Thus, we conclude that in the present case, appellee adduced far more evidence than simple presence.

{¶28} Consequently, we believe that the jury could reasonably conclude that appellant constructively possessed the drugs.  *See  State v. Davis*, 2018-Ohio-4368 (3d Dist.) (constructive possession requires ability to exercise dominion and control over item, even without immediate physical possession; readily usable drugs in close proximity to accused

can constitute sufficient circumstantial evidence to support constructive possession); *State v. Dues*, 2014-Ohio-5276 (8th Dist.)(constructive possession proven via circumstantial evidence after delay in opening apartment door and codefendant threw drugs off of defendant's balcony); *State v. McClain,* 2020-Ohio-1436 (3d Dist.)(mere proximity to drugs is insufficient to establish constructive possession, but proximity combined with other factors indicative of dominion or control, such as furtive movements, can support a finding of constructive possession); *State v. Fulton*, 2024-Ohio-671 (7th Dist.)(readily usable drugs found in close proximity to defendant can be sufficient circumstantial evidence for constructive possession; defendant did not own vehicle, but drugs where within reach); *State v. Dixon*, 2016-Ohio-1491, ¶ 19 (4th Dist.)(defendant driver constructively possessed drugs contained in another passenger's buttocks); *State v. Crocker,* 2015-Ohio-2538 (4th Dist.)(constructive possession of drugs carried in codefendant's vagina proven when defendant was driver of vehicle and text messages and jail phone calls proved knowledge).

**{¶29}** Further, other courts have found that evidence reflecting a defendant's personal paperwork or documents located with or near the drug-related items can support a conviction based on constructive possession. *See State v. Scalf,* 126 Ohio App.3d 614, 620 (8th Dist.1998)(sufficient evidence of

constructive possession when multiple adults lived in home and search of home revealed cocaine found in a cabinet, along with appellant's papers, in a sitting room shared by all occupants of the house); *State v. Carroll*, 2000 WL 1015229 (10th Dist. July 25, 2000)(evidence that defendant's driver's license found together with receipts bearing his name in "location next to drugs and cash" supported constructive possession finding).

**{¶30}** Similarly, in the case at bar, after our review of the evidence in a light most favorable to appellant, we believe that the evidence adduced at trial is sufficient to support the jury's verdict concerning appellant's constructive possession of methamphetamine.

**{¶31}** Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

## II.

**{¶32}** In his second assignment of error, appellant asserts that his conviction is against the manifest weight of the evidence.  Specifically, appellant contends that the jury lost its way because no evidence existed to prove that appellant exercised dominion or control over the methamphetamine located in different compartments and on the floor of Kibler's apartment.  Rather, appellant contends that the evidence pointed to Kibler as the drug dealer because officers found a large amount of methamphetamine hidden in a tissue box on Kibler's

side of the bed, and other baggies with her driver's license and prescription medication.

{¶33} To determine whether the case sub judice is an exceptional case in which the evidence weighs heavily against conviction, this court must review the record, weigh the evidence and all reasonable inferences, and consider witness credibility. *Hodges, supra*, 2025-Ohio-2050, at ¶ 53, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). However, a reviewing court must bear in mind that credibility generally is an issue for the trier of fact to resolve. *State v. Schroeder*, 2019-Ohio-4136, ¶ 61 (4th Dist.); *State v. Dunn*, 2012-Ohio-518, ¶ 16 (4th Dist.); *State v. Wickersham*, 2015-Ohio-2756, ¶ 25 (4th Dist.). Because the trier of fact sees and hears the witnesses, an appellate court will afford substantial deference to a trier of fact's credibility determinations. *Shroeder* at ¶ 62. The jury has the benefit of seeing witnesses testify, observing facial expressions and body language, hearing voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 2012-Ohio-616, ¶ 14 (6th Dist.); *State v. Pinkerman*, 2024-Ohio-1150, ¶ 26 (4th Dist.). Thus, an appellate court may reverse a conviction only if the trier of fact clearly lost its way in resolving conflicts in the evidence and created a manifest miscarriage of justice. *State v. Benge*, 2021-Ohio-152, ¶ 28 (4th Dist.); *Hodges* at ¶ 53.

Only in extraordinary circumstances when evidence presented at trial weighs heavily in favor of acquittal, will an appellate court overturn a conviction on the manifest weight of the evidence grounds.  *State v. Ridenour*, 2023-Ohio-2713, ¶ 50 (12th Dist.).

{¶34} After our review, we do not believe the case sub judice is extraordinary.  Here, the evidence adduced at trial does not weigh heavily in favor of acquittal.  Consequently, after our review of the record, we conclude that ample, competent, credible evidence supports appellant's felony convictions.  Here, the prosecution presented substantial, credible evidence upon which the trier of fact could reasonably conclude, beyond a reasonable doubt, that the essential elements of the offense had been established.  Thus, appellant's conviction is not against the manifest weight of the evidence.

{¶35} In the case at bar, the jury chose to believe appellee's witnesses who testified that appellant exercised dominion and control over the methamphetamine found in the bedroom in which appellant slept when officers executed the search warrant.  The jury also chose to believe the evidence adduced at trial, which is within the province of the jury.  " 'A reviewing court should not disturb the factfinder's resolution of conflicting evidence unless the factfinder clearly lost its way.' "  *State v. Newman*, 2015-Ohio-4283, ¶ 56 (4th

Dist.), quoting *State v. Davis*, 2010-Ohio-555, ¶ 16-17 (4th

Dist.); *State v. Price-Tuggle*, 2026-Ohio-1027, ¶ 61 (4th Dist.).

Once again, after our review we do not believe the present case

is the exceptional case in which the evidence weighs heavily

against the conviction.  As we noted above, the record is

replete with evidence, if believed, that appellant committed the

charged crime.  Accordingly, we cannot say the jury clearly lost

its way and created such a manifest miscarriage of justice that

the conviction is against the manifest weight of the evidence.

*See State v. Kyle,* 2020-Ohio-3281, ¶ 41-44 (8th Dist.).

                              III.

{¶36} In his third assignment of error, appellant asserts

that his trial counsel rendered ineffective assistance of

counsel in violation of his constitutional guarantees.  In

particular, appellant contends that his counsel provided

ineffective assistance of counsel when she failed to file a

motion for mistrial when an officer provided inadmissible

hearsay testimony.

{¶37} The Sixth Amendment to the United States Constitution

and Article I, Section 10 of the Ohio Constitution provide that

defendants in all criminal proceedings shall have the assistance

of counsel for their defense.  The United States Supreme Court

has generally interpreted this provision to mean a criminal

defendant is entitled to the "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984).

**{¶38}** To establish constitutionally ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense and deprived the defendant of a fair trial. *See Strickland*, 466 U.S. at 687; *State v. Myers*, 2018-Ohio-1903, ¶ 183; *State v. Powell*, 2012-Ohio-2577, ¶ 85. "Failure to establish either element is fatal to the claim." *State v. Jones*, 2008-Ohio-968, ¶ 14 (4th Dist.). Moreover, if one element is dispositive, a court need not analyze both. *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

**{¶39}** The deficient performance part of an ineffectiveness claim "is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.' " *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010), quoting *Strickland*, 466 U.S. at 688. Prevailing professional norms dictate that "a lawyer must have 'full authority to manage the conduct of the trial.' " *State v. Pasqualone*, 2009-Ohio-315, ¶ 24, quoting *Taylor v. Illinois*, 484 U.S. 400, 418 (1988).

**{¶40}** Further, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Accordingly,

"[i]n order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation." *State v. Conway*, 2006-Ohio-2815, ¶ 95 (citations omitted). In addition, when considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* Additionally, "[a] properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor*, 2008-Ohio-482, ¶ 10 (4th Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). Therefore, a defendant bears the burden of showing ineffectiveness by demonstrating that counsel's errors were "so serious" that counsel failed to function "as the 'counsel' guaranteed ... by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *e.g., State v. Gondor*, 2006-Ohio-6679, ¶ 62; *State v. Hamblin*, 37 Ohio St.3d 153, 156 (1988).

**{¶41}** To establish prejudice, a defendant must demonstrate that a reasonable probability exists that "but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

undermine the outcome." *Strickland*, 466 U.S. at 694; *e.g.,*
*State v. Short*, 2011-Ohio-3641, ¶ 113; *State v. Bradley*, 42 Ohio
St.3d 136 (1989), paragraph three of the syllabus; *accord State*
*v. Spaulding*, 2016-Ohio-8126, ¶ 91 (prejudice component requires
a "but for" analysis). "[T]he question is whether there is a
reasonable probability that, absent the errors, the factfinder
would have had a reasonable doubt respecting guilt."
*Strickland*, 466 U.S. at 695. Further, courts ordinarily may not
presume the existence of prejudice; rather, they must require a
defendant to establish prejudice affirmatively. *State v. Clark*,
2003-Ohio-1707, ¶ 22 (4th Dist.). Moreover, we have recognized
that speculation is insufficient to establish the prejudice
component of an ineffective assistance of counsel claim. E.*g.,*
*State v. Tabor*, 2017-Ohio-8656, ¶ 34 (4th Dist.); *State v.*
*Jenkins*, 2014-Ohio-3123, ¶ 22 (4th Dist.); *State v. Simmons*,
2013-Ohio-2890, ¶ 25 (4th Dist.); *accord State v. Powell*, 2012-
Ohio-2577, ¶ 86.

{¶42} In the case sub judice, appellant characterizes Lt.
Antinore's stricken testimony that appellant cohabitated with
Kibler as inaccurate, inadmissible hearsay. Appellee, however,
points out that trial counsel repeatedly objected to the
challenged testimony and that the trial court sustained the
objections, struck the testimony, and instructed the jury to
disregard the statements.

**{¶43}** Further, appellee argues that the decision whether to seek a mistrial is a matter of trial strategy. When reviewing ineffective-assistance claims, we will not second-guess trial-strategy decisions. *State v. Miller*, 2025-Ohio-197, ¶ 30 (2d Dist.), citing *State v. Mason*, 82 Ohio St.3d 144, 157(1998); *Strickland* at 689. " 'Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available.' " *Miller* at ¶ 30, quoting *State v. Conley*, 2015-Ohio-2553, ¶ 56 (2d Dist.). "When a claim of ineffective assistance of counsel is based on counsel's failure to file an objection or file a motion, the appellant must demonstrate that the objection or motion had a reasonable probability of success." *State v. Jones*, 2019-Ohio-2134, ¶ 52 (10th Dist.) (citing cases). "If the objection or motion would not have been successful, then the appellant cannot prevail on an ineffective assistance claim." *Id.* Similarly, whether to move for a mistrial or request a curative jury instruction is a matter of trial strategy. *State v. Lauderdale*, 2024-Ohio-481, ¶ 55 (2d Dist.), citing *State v. Jenkins*, 2001 WL 848582, *6 (2d Dist. July 27, 2001) (counsel's decision not to request mistrial or curative jury instruction "involved matters of trial tactics, on which trial counsel's decisions must be given broad deference"), and *State v. Zeune*, 2011-Ohio-5170, ¶ 37 (10th

Dist.) ("[t]he decision not to request a mistrial is one of trial strategy best left to trial counsel"), citing *State v. Seiber,* 56 Ohio St.3d 4, 12 (1990); s*ee also State v. Bankston,* 2025-Ohio-5543, ¶ 53 (2d Dist.)(when trial court instructed jury stricken statements are not evidence, jury required to disregard stricken statements, and jury not to speculate regarding why court sustained objection to any question, defendant did not demonstrate motion for a mistrial would have been successful). Thus, counsel's failure to file a futile or frivolous motion " ' cannot be the basis for claims of ineffective assistance of counsel and is not prejudicial.' "  *State v. Waters,* 2014-Ohio-3109, ¶ 12 (4th Dist.), quoting *State v. Witherspoon,* 2011-Ohio-704, ¶ 33 (8th Dist.).

**{¶44}** Our review of the record in the case sub judice reveals that appellant did not demonstrate that the filing of a motion for mistrial would have been granted, and thus, appellant did not demonstrate ineffective assistance of counsel.  Instead, appellant's counsel requested and received ruling from the trial court to strike the statements in question and to provide the jury with a cautionary instruction.  We find no lack of representation or assistance of counsel envisioned by the United States Constitution.

**{¶45}** Accordingly, based on the foregoing reasons, we overrule appellant's third assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period set forth in the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
    Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.